UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

REIVER ROJAS MALPICA,

Petitioner,

v.

MICHAEL HOLLINSHEAD, Sheriff of Elmore County; JASON KNIGHT, Director, Salt Lake City Field Office, ICE Enforcement and Removal Operations; KENNETH PORTER, Field Office Director ICE Boise Field Sub-Office, DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; TODD BLANCHE, Acting Attorney General of the United States, Respondents in their official capacities,

Respondents.

Case No. 1:26-cv-00481-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Petitioner Malpica's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. 1) and Motion for Temporary Restraining Order (Dkt. 2).

The Court expedited briefing on the matters. Dkt. 3. The Government opposes Malpica's Petition. Dkt. 6. Upon review, and for the reasons set forth below, the Court DENIES Malpica's Petition and remands this matter to Immigration and Customs Enforcement ("ICE") for an initial custody determination. The Motion for Temporary Restraining Order is MOOT.

## II. BACKGROUND

Malpica is an 18-year-old Venezuelan national who has lived in the United States since his entry without admission in September 2023. Malpica and his mother were briefly detained upon arrival and then released on their own recognizance with conditional parole.

In March of 2026, Malpica was detained in connection with Idaho state court juvenile proceedings. In July 2026, Malpica pleaded guilty and was released onto probation. Before he could be released, however, ICE took Malpica into custody.

Malpica filed suit claiming his continued detention was unlawful because ICE and the Executive Office of Immigration Review determined he was subject to mandatory detention without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A).

That same day, the Court expedited briefing consistent with its standard practice in these types of cases. Also, that same day, the Ninth Circuit issued its decision in *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424 (9th Cir. July 30, 2026). ICE subsequently received updated guidance about reassessing custody of detainees pursuant to the Ninth Circuit's decision. Briefing in this case then concluded.

## III. DISCUSSION

The Court has addressed countless immigration-habeas petitions over the last year, all relating to the detention provisions at §§ 1226(a) and 1225(b)(2). Until recently, ICE treated every noncitizen who entered without inspection as subject to mandatory detention under § 1225(b)(2)(A)—regardless of when they were apprehended or how long they had lived in the United States. The Ninth Circuit has now definitively ruled that § 1226 applies to unadmitted aliens present in the interior of the country, while § 1225 applies to

unadmitted aliens entering the United States at the border. *See Rodriguez Vazquez*, 2026 WL 2196424, at *26.

Briefing in this case overlapped with the Ninth Circuit's decision in *Rodriguez Vazque* and with ICE's updated guidance regarding detention. This complicates the Court's decision today.

Malpica asserts he was initially detained under § 1225. And by all accounts he was, because that is how the Government viewed the detention of noncitizens at that time. The Government seems to now suggest Malpica's detention has been converted into a § 1226 case, that the discretionary detention framework of that statute applies, and the Court can enforce detention. Dkt. 6. For his part, Malpica maintains his detention is still a violation of due process under either statute. Dkt. 9.

To determine whether a due process violation occurred, the Court begins with the regulatory framework governing an alien's initial detention and custody determination under § 1226(a). The Immigration and Nationality Act authorizes the Government to arrest and detain an alien who is subject to removal from the United States. §§ 1226(a), 1357(a)(2). The regulations governing an alien's detention following arrest provide different procedures depending on whether the arrest was made pursuant to a warrant.[1] A noncitizen detained without a warrant must receive an initial custody determination within 48 hours of arrest, absent an emergency or extraordinary circumstance. 8 C.F.R. § 287.3(d). The alien will be released if he "demonstrate[s] to the satisfaction of the officer that such

[1] It is unclear whether Malpica was arrested with or without a warrant when his juvenile proceedings ended. Because Malpica does not challenge the actual arrest, the Court does not address it here.

release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(d). If the alien is denied bond, or was arrested pursuant to a warrant, he can seek an individualized bond hearing before an immigration judge at any time before a final order of removal. *Id*.

In this case, ICE never made an initial custody determination regarding Malpica (because it did not think it was required to). It is now clear that should have happened. Thus, in a certain sense, Malpica's Due Process rights were violated. However, the case law was developing literally at the same time as Malpica's transition into federal custody and him filing this case.[2] Thus, the Court finds it most appropriate to remand this case to ICE to make an initial custody determination. If ICE determines that continued detention is necessary to protect the community, Malpica may then seek a bond redetermination hearing before an Immigration Judge pursuant to 8 C.F.R. § 1003.19(a).[3]

Separately, there is good cause to allow ICE an opportunity to determine custody. Unfortunately, Malpica does not fall into the category of persons who were arrested while simply "minding their own business." He was taken into custody after being sentenced to 180 days in jail for a felony conviction involving a firearm. There is also an active no-contact order Malpica remains subject to. In short, even setting aside the complicated legal

---

[2] To be sure, the undersigned (and all judges in the District of Idaho) had issued numerous decisions informing ICE that their interpretation of the law was incorrect. Those decisions conformed with the vast majority of other Courts across the United States. But it was that same subject matter on appeal in the Ninth Circuit. Thus, while the Court maintains ICE has been wrong all along, the law was not "settled" in the Ninth Circuit until recently.

[3] Even if the Court were to find an *initial* due process violation under the § 1225 framework, the remedy would simply be release. And once released, Malpica would presumably be re-arrested by ICE under § 1226. There is no reason to undertake such a process that will result in the same outcome—the need for a custody determination.

and procedural interplay between sections 1225 and 1226 and the timing of those events as applied to Malpica's detention in federal custody, the Court likely would not have released Malpica outright because of his criminal history.

In short, the Court finds it appropriate to remand this matter to ICE for an initial custody determination. If necessary, Malpica can then request a bond hearing and, if necessary, appeal. Because the administrative process has not concluded (or frankly even begun) the Court cannot find Malpica's Due Process rights have been violated.

If, after the administrative process concludes, Malpica feels his rights were violated, he retains the ability to file suit and seek review. But this case, based on these facts, has concluded.

## IV. ORDER

1. Malpica's Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED.
2. This case is remanded to ICE for an initial custody determination.
3. Malpica's Motion for Temporary Restraining Order (Dkt. 2) is DENIED AS MOOT.
4. This case is CLOSED.

DATED: October 22, 2026

David C. Nye
U.S. District Court Judge